———o———

No. 4370.

(Court of Appeal, Parish of Orleans.)

KIERAN & MORGAN VS. THE BOARD OF DIRECTORS OF THE SOLDIER'S HOME OF THE STATE OF LOUISIANA.

Issues of fact only are involved herein.

Appeal from Civil District Court, Division "A."

W. S. Benedict, R. G. Dugue, Plaintiff and Appellant.

Walter Guion, Defendant and Appellee.

DUFOUR, J. This is a suit to recover $897.75, a balance

alleged to be due for work done on a building contract and certain extras thereafter agreed upon.

The defendants admit a liability of $816, under the original agreement and of $49 for extras, but claim in reconvention the sum of $350, arising from the claim that plaintiffs demolished a section of an old building instead of removing it according to contract and that the cost of rebuilding it would amount to that sum.

There was judgment for plaintiffs for $816 on the contract and $49 for extra work, and also judgment in favor of defendants on their reconventional demand.

The Court's refusal to allow demurrage is final, no amendment having been asked by any answer to the appeal.

Our brother of the District Court discloses a painstaking and attentive study of the issues of fact involved, in the following able and exhaustive reasons for judgment which we reproduce in full:

"The plaintiffs owe the Board of Directors for the balance due on the contract price for certain work at the Soldier's Home, and for certain extra work. The contract price was $2816, of which $2000 has been paid. The defendants refuse to pay the balance, claiming that plaintiffs failed to complete the contract work.

"The work to be done is stated thus in the contract, to-wit: "The present building, now known as the Infirmary Annex is to be removed, one partition 34' 0" long, is to be placed at upper end of present laundry building, to be on a line with the upper end of present Infirmary. The remaining portion of the Annex is to be placed where directed by the architect." The architect selected was Mr. P. A. Flanagan, a member of the Board, and a skilled and reliable architect.

It is proved that plaintiffs complied with the contract, as to the 34-foot section of the old building, and also as to another portion of it of 25 feet, which were cut and placed properly, and restored and finished for use of the Home. The work involved the cutting of the old building into three sections, one 34 feet, another 25 feet, and the controversy in this case is over the part that was left after said two sections were provided for. The plaintiffs demolished said third, or left over section, and piled up the material on the ground instead of removing it to such

place as the architect directed, as required by the contract, and say that they did this by authority of Mr. Bergeron, the President of the Defendant Board, and of the architect, and, that having thus done so, they fulfilled the contract and are entitled to the balance of the price just as if no change had been made in the work.

The Defendant Board contend that having demolished said third section, or part of the building, plaintiffs were bound to rebuild it, in place as directed, and finish it according to specifications, and that this was demanded of plaintiffs, who refused compliance, and they deny that plaintiffs had proper authority for demolishing in lieu of removing said section.

The onus is on plaintiffs to establish that demolition was authorized in place of removal, and that it was the equivalent of the removal and restoration, which they contracted to do.

The facts, as I find them, are that by the architects's order, the Annex building was cut into three sections (one 34 feet, one 25 feet, and the third, a left-over part, exact length immaterial), all to be removed, and not demolished. Plaintiffs were preparing to remove it, when Mr. Bergeron appeared and told them it was to be demolished, and not removed. Although this was contrary to the specification of the contract, and although Mr. Bergeron was not the architect, or vested with any authority quoad the contract work, plaintiffs, without inquiry and merely because he was President of the Board of Directors, at once began demolishing the building, and continued at this work, until Mr. Smith, a member of the Board, came and seeing, at once objected, and requested plaintiffs to stop destroying, until the architect could come, and forthwith notified the latter, who came. On his arrival, he told the plaintiffs they had done wrong. The evidence is conflicting, but I am convinced that this section of the house had been so badly pulled to pieces that it would cost less to complete the demolition and rebuild it. I am also convinced that the architect told plaintiffs so, but equally convinced that he told them they would have to rebuild it in place as directed. The Board was called together, and after some delay, met June 8, 1905, when this resolution was passed, "Resolved, That the contractor be ordered to restore the minor section, and place it, as per original plan and specifications." The plaintiffs were informed of this action, but refused to comply, and the building remains demolished.

74

Under these facts, decision must be adverse to plaintiffs.

1st. Plaintiffs were dealing with a public official board, who could act only as a board.

2nd. Mr. Bergeron, though President, was not the Board, and could not bind it by his personal action, nor by his official action unless authorized thereunto.

3rd. The contract was for removal and restoration, and not for demolition of said minor section.

4th. Even the architect was without power to authorize demolition, unless it might be a means of removal and restoration of the section of the building.

5th. As a fact, he did not order the demolition, and insisted on rebuilding.

6th. The Board, by resolution, or otherwise, authorized no change in the contract, or specifications quoad hoc.

7th. The Board's resolution of June 8th demanded restoration of the demolished building.

Plaintiffs seek to break the force of all this, by the exhibit of two copies of the blue print plan, prepared before the contract, which show over the end of the building as to which this dispute arose, the penciled words, in one "omit," and in the other "omitted." One of these copies was left with the notary as an annex of the contract. The one that plaintiffs worked by, and the one left in possession of the Board has no such pencil marks or words. Plaintiffs seek to establish, by this penciling, that it was not contemplated at all, that they were to remove this part, and when they demolished it, they were strictly in line of the contract.

I think that it is an afterthought for many reasons:

1st. Why, if it was to be demolished and not removed, were they preparing to remove it? They had cut it, for this purpose, and had the necesary appliances ready to remove it, and would have removed it, to the place indicated and directed by the architect, if Mr. Bergeron had not interfered.

2nd. A written contract with specifications and plan will be ordered carried out as they are made. A pencil mark, on a blue print, will be regarded as of no importance, unless so noted in the contract and specifications.

3rd. The pencilings, on the two copies, that bear them are not alike. The word "omit" on one, covers the whole right end,

or section, and the word "omitted" on the other, covers only the extreme right end of it.

4th. The contract and the specifications provide for the removal, by section, and replacing and restoration of the entire annex building, and for the demolition and destruction of no part of it.

But I forbear, for the matter seems too plain to me for discussion. It is proved that it will take more than $350 to supply a home, to take the place of this demolished section, but this is all that the defendant Board claims, in its reconventional demand.

The demurrage claimed by defendant cannot be allowed. They should have put plaintiffs in default, and on their refusal, should have promptly rebuilt the demolished part of the building."

In answer to the attacks made in this Court on the conclusions of the District Judge, we do not find it necessary to add much to his opinion. The specifications, under the head of "Tearing Down and Moving," "state" the present building now known as the Infirmary Annex is to be removed; one portion 34 feet long, is to be placed at the upper end of the present laundry building to be on a line with the upper end of the present infirmary; the remaining portion of the annex to be placed where directed by the architect."

Much was said about two of the blue prints containing the written words "omit" and "omitted" respectively; we attach no importance to this fact. It does not appear how, when, why, and by whom they were written and although plaintiffs claim that the bids were based on these prints, they admit that the work was done under a plan not containing the written words. Moreover, that plaintiffs construction was that removal and not demolition was the mode of disposal agreed upon, is conclusively shown by the undisputed fact that, when Bergeron interfered, preparations had already been made to remove and it was only after his unauthorized instructions that the work of demolition was commenced.

In cases of this character, where the testimony is conflicting and the matter is one not of appreciation but of credibility, it has been the uniform jurisprudence of this Court not to disturb the conclusions of the trial Judge who saw and heard the witnesses.

In refusing a new trial, the Judge, referring to the evidence

as to the crucial point of the case, the demolition of the building, said:

"I find that Mr. Flanagan, the architect, did not order the demolition. On this issue there was conflict of testimony. I found Flanagan well supported by all the circumstances and *I believed him.*"

So precise an utterance from a conservative Judge invites and receives ready acceptance at our hands.

Our attention is called to a clerical error in defendant's name in the judgment; we shall correct it without however, affecting the costs of appeal.

It is therefore ordered, adjudged and decreed that the judgment be amended by substituting the words "The Board of Directors of the Soldier's Home for the State of Louisiana" for the words "The Board of Directors of the Soldier's Home, wherever such words are used in the Judgment and that, as amended, the judgment be affirmed at appellant's cost.